UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUAN CUNNINGHAM,

                                        CASE NO. 2:09-CV-12718
                    Plaintiff,          JUDGE GERALD E. ROSEN
                                        MAGISTRATE JUDGE PAUL J. KOMIVES

v.

JON WILSON, et al.,

                    Defendants,
_____/

## REPORT AND RECOMMENDATION REGARDING
## DEFENDANT COLBRY'S MOTION TO DISMISS (Doc. Ent. 8)
Table of Contents

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.    Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      C.    Defendant Colbry's Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      D.    Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      E.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
            1.    Plaintiff's 42 U.S.C. § 1983 claims against Colbry allege deliberate
                  indifference to a serious medical need and perhaps failure to protect
                  against inmate assault, each of which are governed by the Eighth
                  Amendment to the U.S. Constitution. . . . . . . . . . . . . . . . . . . . . . . . . . . 9
            2.    The three-year statute of limitations set forth in Mich. Comp. Laws §
                  600.5805(10) applies to plaintiff's claim(s) against Colbry. . . . . . . . . . 10
            3.    The parties dispute the accrual date of plaintiff's claims against defendant
                  Colbry. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            4.    The plaintiff's claim(s) against defendant Colbry accrued, and the statute
                  of limitations began to run, no later than May 4, 2006, the date plaintiff
                  was transferred from the SCJ. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
            5.    Michigan's tolling statute, Mich. Comp. Laws § 600.5856, does not
                  operate to make plaintiff's complaint timely. . . . . . . . . . . . . . . . . . . . . 17
            6.    In this case, equitable tolling of the statute of limitations is not warranted.
                  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . 23

I.      **RECOMMENDATION:**  The Court should grant defendant Colbry's motion to dismiss (Doc. Ent. 8).

II.     **REPORT:**

A.      **Background**

On or about January 10, 2005, Juan F. Cunningham was arrested by the Shiawassee County Sheriff's Department (SCSD).  Doc. Ent. 8-4 at 4, 14.  He was originally assigned to a cell in F Block; however, later that day, he was moved to a cell in R Block.  Doc. Ent. 8-4 at 14. According to Cunningham, he was classified as a "medium security inmate" at the Shiawassee County Jail (SCJ), but he was housed in maximum security.  He attempted to be removed from maximum security several times, because he had been threatened by a maximum security inmate several times, but Cunningham was told that "due to overcrowding of [SCJ] [he] could not and would not be moved."  Doc. Ent. 1 at 3.

In early Spring of 2005, Cunningham claims, he "was assaulted physically by another prisoner (Antwone Walker)[,]" after which he was moved to medium security.  Doc. Ent. 1 at 3. This incident appears to have occurred on March 28, 2005.  Doc. Ent. 8-4 at 13 (SCSD Inmate Log).  According to the jail records, Cunningham was moved to a new cell within R Block.  Doc. Ent. 8-4 at 13.  He was moved again on April 25, 2005 within R Block.  Doc. Ent. 8-4 at 12.

On July 24, 2005 just before 5 p.m., Cunningham was moved within R Block, apparently his safety.  Doc. Ent. 8-4 at 11.  Shortly after 7 p.m., Cunningham "was involved in an altercation with Mr. Peter Lubreck in which Mr. Cunningham claimed that Mr. Lubreck assaulted him with a razor blade weapon."  Doc. Ent. 8-4 at 2-3 ¶ 3 (Powell Affid.); Doc. Ent. 8-

4 at 11. Cunningham describes the altercation,[1] Colbry's arrival on the scene, Cunningham's requests for emergency medical care, his symptoms and his time in the "hole." Doc. Ent. 1 at 8-10 (Pl.'s Affid. June 24, 2008).[2] The fight was documented in Cunningham's inmate log by Colbry. Cunningham was moved to F Block at 7:45 p.m. and again within F Block later that evening.[3]

Cunningham also describes a July 25, 2010 conversation he overheard in which Colbry and another deputy discussed the incident. Allegedly, Colbry and the other deputy "would try to sway Eyewitness Bacon's recollection of Labreck's attack and the officers' subsequent response thereto." Doc. Ent. 1 at 10.[4]

On July 26, 2005, Cunningham was moved back to R Block. Doc. Ent. 8-4 at 11 (SCSD Inmate Log). According to Cunningham, two weeks passed before he was "finally provided medical attention." Doc. Ent. 1 at 10. He mentions two discussions with the jail's doctor, presumably Doug Strong, and a statement from the jail's nurse, presumably Dawn Smith, that he must have "extreme anxiety." Doc. Ent. 1 at 10-11.[5]

---

[1]In part, Cunningham relies on the eyewitness account of Tim Bacon - allegedly a maximum security inmate at SCJ. Doc. Ent. 1 at 8.

[2]Cunningham believes the attack was racially motivated. Doc. Ent. 1 at 9, 11.

[3]According to Cunningham, he spent the evening of July 24, 2010 in the "hole." Doc. Ent. 1 at 10 (Cunningham's June 24, 2008 Affid.).

[4]According to Cunningham, a deputy asked him if he "wished to press charges and file a police report." Cunningham attests that he provided a sworn statement describing the incident; however, to his knowledge, "no further official action [was] taken in th[e] matter." Doc. Ent. 1 at 10 (06/24/2008 Pl.'s Affid.).

[5]Cunningham believes that the jail's doctor "refused to provide a proper diagnosis . . . in furtherance of a tacit conspiracy with [the SCSD] to conceal a claim of personal injury resulting from [a] failure to comply with Michigan's Overcrowding of the County Jail State of Emergency

The SCJ records indicate that on January 12, 2006, Cunningham was "reclassified because of current charge[.]" Doc. Ent. 8-4 at 9. On April 27, 2006, Cunningham was sentenced for violations of Mich. Comp. Laws §§ 750.84 ("Assault with intent to do great bodily harm less than murder.") and 750.118a(2) (1st Degree Home Invasion).[6] On May 4, 2006, Cunningham was transferred from the SCJ to the Michigan Department of Corrections (MDOC) Jackson, Michigan prison intake. Doc. Ent. 8-4 at 5, 7.

On August 19, 2006, Cunningham "discovered that the injuries [he] suffered at the [SCJ] ha[d] resulted in permanent damage[,]" when he was diagnosed with Spasmodic Dysphonia. Doc. Ent. 1 at 11. On or about March 9, 2007, Cunningham was diagnosed with spasmodic dysphonia, septal deviation, rhinitis and turbinate hypertrophy. Doc. Ent. 20 at 6. It appears that Cunningham sought a settlement offer on or about July 8, 2008.[7]

**B.    Complaint**

---

Act." Doc. Ent. 1 at 11.
    Also, Cunningham states that he "once overheard Nurse Dawn call a black female inmate [an expletive] simply because of a request for headache medication." Doc. Ent. 1 at 12.

    [6]*See* www.michigan.gov/corrections, "Offender Search."

    [7]Attached to plaintiff's complaint are Cunningham's June 24, 2008 affidavit (Doc. Ent. 1 at 8-12), and an unexecuted SCJ grievance and "Verified Actual and Constructive 21 Day Notice Self-Executing Contract - Authorization to Enter Stipulated Order in Event of Default[,]" which refers to an affidavit and appears to be an attempt to settle the case (Doc. Ent. 1 at 5-7).
    Plaintiff also attaches an August 8, 2008 "Notice of Default and Acceptance of Authorization to Enter Stipulated Order" (Doc. Ent. 1 at 13-14), which was signed by Cynthia Hosimer and apparently delivered in Corunna, MI on August 13, 2008 (www.usps.com, Delivery Confirmation # 7005 3110 0003 1421 9595).
    Furthermore, plaintiff attaches an August 8, 2008 "Affidavit of Non-Response," also signed by Cynthia Hosimer (Doc. Ent. 1 at 15). Therein, Hosimer claims that the aforementioned affidavit and the document mentioning it were served upon Shiawassee County Sheriff Jon Wilson on July 8, 2008 and attests she did not receive a response. Doc. Ent. 1 at 15.

Cunningham is currently incarcerated at the MDOC's Carson City Correctional Facility (DRF). Doc. Ent. 12. On July 9, 2009, while incarcerated at the Mid-Michigan Correctional Facility (STF), Cunningham filed a verified 42 U.S.C. § 1983 prisoner civil rights compliant against five (5) defendants: Shiawassee County Corporation; Jon Wilson, Shiawassee County Sheriff; Colbry, a Correctional Officer; Doug Strong, a doctor; and Dawn Smith, a registered nurse. Doc. Ent. 1 at 4; Doc. Ent. 5. Plaintiff seeks declaratory and compensatory relief. Doc. Ent. 1 at 3.

Along with his complaint, plaintiff filed an application for prisoner to proceed without prepayment of fees or costs. Doc. Ent. 2. On July 31, 2009, Magistrate Judge Whalen entered an order waiving prepayment of the filing fee and directing payment of the initial partial filing fee and subsequent payments. Doc. Ent. 3.

On September 4, 2009, Judge Rosen entered an opinion and order directing service and requiring "unknown claimant" information. Doc. Ent. 4. Specifically, Judge Rosen ordered that "the Clerk of the Court direct service on Defendant Jon Wilson[,]" and "Plaintiff will properly identify those Defendants 'Deputy Sheriff Mr. Colbre,' 'Unknown Jail Doctor,' and 'Jail Nurse (Dawn) Unknown,' and supply the Court with the necessary addresses, in order that service upon them may be effectuated." Judge Rosen's order further provided that "[f]ailure to identify those defendants to the Court within sixty (60) days of this Order w[ould] result in their dismissal." Doc. Ent. 4 at 3.

In his September 30, 2009 response, plaintiff identified the four (4) defendants as Sheriff Jon Wilson, Correctional Officer Colbry, Dr. Doug Strong and Registered Nurse Dawn Smith

and listed each of their addresses as 201 E. McArthur, Corunna, MI 48817.[8]  Furthermore, plaintiff noted that defendants Colbry and Strong were still employed by Shiawassee County and could be served at the SCSD.  However, plaintiff also informed the Court that defendants Smith and Wilson were former employees of the SCSD, the SCSD would not disclose their forwarding information,[9] and plaintiff did not have their addresses.  Doc. Ent. 5 at 1.

On November 10, 2009, Magistrate Judge Whalen entered an order directing service without prepayment of costs and authorizing the U.S. Marshal to collect costs after service is made.  Doc. Ent. 6.  That same day, the U.S. Marshal acknowledged receipt of four (4) copies of the complaint for service of process upon defendants.  Doc. Ent. 7.  On November 13, 2009, the U.S. Marshal sent waivers of service directed to Smith, Wilson, Colbry and Strong to the SCSD. Doc. Entries 13, 14, 15, 18 and 19.  Counsel has filed an appearance of counsel on behalf of defendant Colbry only.  Doc. Ent. 9.[10]  However, whether service has been effected upon the remaining defendants is questionable.  Doc. Entries 13 (Smith), 14 (Wilson), 15 (Smith) and 19 (Strong).[11]

---

[8]This is the address of the SCSD.  *See* http://www.shiawassee.net/shiactysd.html.

[9]Attached to this response is a September 18, 2009 letter from Lt. Doug Powell (Shiawassee County Sheriff's Office (SCSO) Jail Administrator) to Cindy Hosimer regarding Freedom of Information Act (FOIA) requests dated September 11, 2009 and September 15, 2009.  Doc. Ent. 5 at 2-3.

[10]However, the caption of the appearance identifies counsel as the attorney for Wilson, Colbry and Dawn.  Doc. Ent. 9 at 1.

[11]According to www.usps.com, the waiver sent to Strong was delivered on November 14, 2009.  Doc. Ent. 19 (Delivery Confirmation #  0308 2040 0000 0875 5316).  However, in his December 11, 2009 motion, defendant Colbry contends that "[s]o far, the only County Defendant [plaintiff] has served is Defendant Colbry by mail, which was sent by the Marshal on November 13, 2009, and received by Colbry on November 23rd upon his return from vacation."  Doc. Ent. 8 at 7.

## C.    Defendant Colbry's Motion to Dismiss

On December 11, 2009, Judge Rosen referred this case to me to conduct all pretrial matters.  Doc. Ent. 10.  Currently before the Court is defendant Colbry's December 11, 2009 motion to dismiss, wherein he seeks dismissal of the complaint as it relates to him.  Doc. Ent. 8 at 2.  Specifically, defendant Colbry argues that plaintiff's complaint, "in which he alleges that he was assaulted by a fellow county jail inmate and denied proper medical care at some time no later than May 2006, [is] barred by the applicable statute of limitations when [plaintiff] file[d] suit on July 9, 2009[.]" Doc. Ent. 8 at 6.[12]

On March 9, 2010, plaintiff filed a response.  Doc. Ent. 20.[13]  On March 10, 2010, defendant Colbry filed a reply.  Doc. Ent. 21.

## D.    Fed. R. Civ. P. 12(b)(6)

Defendant Colbry files his motion pursuant to Fed. R. Civ. P. 12(b)(6).  Doc. Ent. 8 at 1. This rule provides that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion:  (6) failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).

"A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.  If a pleading sets out a claim for relief that does not require a responsive pleading, and opposing party may assert at trial any defense to that claim.  No defense or

---

[12]Among the attachments to this motion are the December 10, 2009 affidavit of Douglas Powell, the SCJ Administrator, and jail records.  Doc. Ent. 8-4 at 1-14.

[13]Plaintiff's response is timely.  On December 14, 2009, I entered a scheduling order providing that "plaintiff shall have until Monday, February 15, 2010 by which to file a response to [defendant Colbry's motion to dismiss]."  Doc. Ent. 11 at 2.  However, on January 27, 2010, plaintiff requested an extension (Doc. Ent. 16).  On February 4, 2010, I entered an order granting the request and permitting plaintiff until March 15, 2010 by which to file a response.  Doc. Ent. 17.

objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion." Fed. R. Civ. P. 12(b).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d) ("Result of Presenting Matters Outside the Pleadings.").

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true[.]" *Bell Atlantic Corp.*, 550 U.S. at 555 (citations and quotations omitted). It is not enough that "the pleadings [leave] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id*. at 561. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Claims should be "nudged . . . across the line from conceivable to plausible" to avoid dismissal. *Id. See also*

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950-1951 (2009) ("respondent's complaint has not 'nudged [his] claims' of invidious discrimination 'across the line from conceivable to plausible.'") (quoting *Bell Atlantic Corp.*, 550 U.S. at 570).

The reviewing court must construe the complaint in the light most favorable to plaintiff and must presume all factual allegations in the complaint as true. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The purpose of Rule 12(b)(6) is to give defendant the opportunity to test whether plaintiff is entitled to legal relief as a matter of law even if everything alleged in the complaint is true. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957), *overruled on other grounds by Bell Atlantic Corp.*, 550 U.S. at 554-563. A dismissal under Rule 12(b)(6) is generally disfavored by courts, as it is a dismissal on the merits. 2A JAMES W. MOORE, MOORE'S FEDERAL PRACTICE ¶ 12.07 (2d ed. 1995).

**E.      Analysis**

**1.      Plaintiff's 42 U.S.C. § 1983 claims against Colbry allege deliberate indifference to a serious medical need and perhaps failure to protect against inmate assault, each of which are governed by the Eighth Amendment to the U.S. Constitution.**

In the June 24, 2008 affidavit attached to plaintiff's complaint, plaintiff details the July 24, 2005 incident and attests, "[a]fter several minutes of wrestling with Labreck while Witness Bacon was yelling for help, Deputy [Colbry] finally entered the maximum security cell block. Upon hearing Deputy [Colbry's] approach, Labreck sprung to his feet, retrieved his shank, and flushed it down the toilet." Plaintiff further states that "[u]pon arriving at the scene, Deputy

[Colbry] asked what was going on. . . . [Plaintiff] told Deputy [Colbry] that [plaintiff] was seriously injured and required immediate emergency medical attention. Deputy [Colbry] dismissed [plaintiff's] urgent plea for medical help and ordered [plaintiff] to pack up [his] belongings. . . . Deputy [Colbry] threw both Eyewitness Bacon and [plaintiff] in the hole." According to plaintiff, he "repeatedly begged Deputy [Colbry] for emergency medical care but [plaintiff] was told none was available for [him]." Doc. Ent. 1 at 9. Plaintiff further attests that the following day, "[a]round noontime[,] [plaintiff] overhead Deputy [Colbry] and another deputy discuss [plaintiff's] situation." Doc. Ent. 1 at 10.

As to Colbry, plaintiff's July 9, 2009 complaint specifically states that defendant Colbry "purposely ignored his plea for medical assistance after the [July 24, 2005] assault occurred and just put plaintiff in the 'hole' to suffer without medical attention for a serious medical injury." According to plaintiff, Colbry "was deliberately indifferent and inflicted unnecessary pain and suffering against plaintiff." Doc. Ent. 1 at 4. Generally, plaintiff's complaint states that defendants "were deliberately indifferent to plaintiff's serious medical injury in violation of plaintiff's civil rights, and that these [defendants] were negligent in their duties to protect plaintiff against inmate assault." Plaintiff also claims that he "has still not been able to determine the extent of his injuries (other than being permanent) as plaintiff must now go through treatment for the rest of his life." Doc. Ent. 1 at 4.

2.      **The three-year statute of limitations set forth in Mich. Comp. Laws § 600.5805(10) applies to plaintiff's claim(s) against Colbry.**

"In § 1983 actions . . . a state statute of limitations and the coordinate tolling rules are more than a technical obstacle to be circumvented if possible. In most cases, they are binding rules of law." *Board of Regents of University of State of N. Y. v. Tomanio*, 446 U.S. 478, 484

(1980). "The statute of limitations for a § 1983 claim is generally the applicable state-law period for personal-injury torts." *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 124 (2005) (citing *Wilson v. Garcia*, 471 U.S. 261, 275 (1985)). *See also Jones v. City of Hamtramck*, 905 F.2d 908, 909 (6th Cir. 1990) ("It is well established that the appropriate statute of limitations for actions under § 1983 is the statute of limitations applicable to personal injury actions.") (citing *Wilson*, 471 U.S. at 276); *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005) ("We have held that the appropriate statute of limitations to be borrowed for § 1983 actions arising in Michigan is the state's three-year limitations period for personal injury claims.") (citing Mich. Comp. Laws Ann. § 600.5805(10) and cases).

Therefore, the three-year statute set forth in Mich. Comp. Laws § 600.5805(10) would apply.[14]

**3.    The parties dispute the accrual date of plaintiff's claims against defendant Colbry.**

Plaintiff does not dispute that a three-year statute of limitations applies to his claims. Doc. Ent. 20 at 3. In this case, the issue is whether plaintiff's complaint, signed on June 29, 2009 and filed on July 9, 2009,[15] was filed within the three-year statute of limitations. Specifically, the parties debate when the cause of action accrued and the statute of limitations began to run.

_____

[14]"The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property." Mich. Comp. Laws § 600.5805(10).

[15]*See Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that a prisoner's "notice of appeal was filed at the time petitioner delivered it to the prison authorities for forwarding to the court clerk.").

11

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in original). In other words, "federal law determines when the statute of limitations begins to run on a § 1983 claim." *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007) (citing *Wallace v. Kato*, 549 U.S. 384 (2007) and *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir.2001)).

As the United States Supreme Court has explained:

> "Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable." 1 C. Corman, Limitation of Actions § 7.4.1, pp. 526-527 (1991) (footnote omitted); *see also* 54 C.J.S., Limitations of Actions § 112, p. 150 (2005). Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief.

*Wallace*, 549 U.S. at 391.

"Under federal law the statute begins to run when plaintiffs knew or should have known of the injury which forms the basis of their claims." *Ruff*, 258 F.3d at 500 (citing *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991)). *See also Fox*, 489 F.3d at 233 (citing *Ruff*, 258 F.3d at 500). In *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516 (6th Cir. 1997), the Sixth Circuit considered the "date of onset of the limitations period[.]" *Kuhnle Bros., Inc.*, 103 F.3d at 520-523. In so doing, the Court stated that "'[i]n determining when the cause of action accrues in section 1983 actions, we have looked to what event should have alerted the typical lay person to protect his or her rights.'" *Kuhnle Bros., Inc.*, 103 F.3d at 520 (quoting *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir.1991)).[16] The Sixth Circuit also observed that

---

[16]*See also A to Z, Inc. v. City of Cleveland*, 281 Fed.Appx. 458, 460 (6th Cir. 2008) ("Put another way, 'we have looked to what event should have alerted the typical lay person to protect his

"[s]tatutes of limitations serve two purposes:  requiring plaintiffs to bring claims before evidence is likely to have grown stale; and allowing potential defendants repose when they have not been put on notice to defend within a specified period of time."  *Kuhnle Brothers, Inc.*, 103 F.3d at 522.

**4.    The plaintiff's claim(s) against defendant Colbry accrued, and the statute of limitations began to run, no later than May 4, 2006, the date plaintiff was transferred from the SCJ.**

In support of the argument that plaintiff's complaint is untimely, defendant Colbry relies upon *Jones*, 905 F.2d at 909, and *Wolfe*, 412 F.3d at 714.  Doc. Ent. 8 at 8.  Specifically, defendant Colbry argues:

> The Plaintiff's Complaint alleges that he was incarcerated at the [SCJ] from January 2005 until May 2006.  The alleged assault and failure to provide him with medical attention occurred, if at all, during this period.  Since this is a period more than three years before his Complaint was filed, the Complaint is barred by the applicable statute of limitations.  Therefore, the Plaintiff's Complaint should be dismissed.

Doc. Ent. 8 at 9 (footnote omitted).

Plaintiff disagrees and appears to be arguing that his claim accrued on or about March 9, 2007, when he was diagnosed.  *See* Doc. Ent. 20 at 6.  In response to defendant Colbry's motion, plaintiff cites *Lemmerman v. Fealk*, 201 Mich. App. 544, 507 N.W.2d 226 (1993)[17] and *Horan v.*

_____

or her rights.'") (quoting *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir.2000)).

[17]Plaintiff relies upon the Michigan Court of Appeals statement that "[o]nce the elements of a cause of action for personal injury are present, including the element of damages, the claim accrues and the statute of limitations begins to run."  *Lemmerman*,  201 Mich.App. at 547, 507 N.W.2d at 228 (citing *Connelly v. Paul Ruddy's Equipment Repair & Service Co.*, 388 Mich. 146, 151, 200 N.W.2d 70 (1972)).  However, the court also stated that "[a] cause of action accrues under the ['delayed discovery rule'] when the plaintiffs discover or, through the exercise of reasonable diligence, should have discovered the injury and its likely cause."  *Lemmerman*, 201 Mich. App. at 548, 507 N.W.2d at 228.

Notwithstanding the fact that accrual in a 42 U.S.C. § 1983 claim is an issue governed by

*Brown*, 148 Mich. App. 464, 384 N.W.2d 805 (1986).[18]  Doc. Ent. 20 at 3.  Plaintiff concludes

that "[a] complaint cannot be filed for injuries resulting from unconstitutional conduct if a

plaintiff is unaware if he suffered an injury serious enough to warrant the filing of a complaint."

Doc. Ent. 20 at 4.[19]

In reply, defendant Colbry cites *Fox* and *Wallace* and argues that "the statute of

limitations began to run on July 24, 2005[.]"  Doc. Ent. 21 at 4-5.  Characterizing plaintiff's

claim as alleging that defendant Colbry "is liable for not providing [plaintiff] with medical care

in the face of a serious injury suffered after an assault[,]" Doc. Ent. 21 at 4, defendant Colbry

asserts that defendant custodian must have knowledge of plaintiff's injury in order for liability to

arise under 42 U.S.C. § 1983.[20]  Furthermore, defendant Colbry asserts:

_____

federal law, damages may be *present* but *unknown*, even though they *should have been known*.

[18]"[A] cause of action for damages for noneconomic losses from a serious impairment of body function does not accrue until the plaintiff discovers or should have discovered the serious impairment of body function."  *Horan*, 148 Mich.App. at 466, 384 N.W.2d at 806.

[19]Plaintiff claims that "[w]ithout a serious injury, there would be no cause of action."  Doc. Ent. 20 at 4.  It is true, for example, that "[a] constitutional claim for deliberate indifference to serious medical needs requires a showing of objective and subjective components[,]" and that "[t]he objective component requires a plaintiff to show the existence of a 'sufficiently serious' medical need."  *Phillips v. Roane County, Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  Also, "[t]o establish an Eight Amendment failure to protect claim, a plaintiff must show 1) that he suffered an objectively 'sufficiently serious' injury; and 2) that he was 'incarcerated under conditions posing a substantial risk of serious harm.'"  *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006) (quoting *Farmer*, 511 U.S. at 834).  However, a serious medical need may *exist* even though plaintiff is *unaware* of it.

[20]In support of this statement, defendant Colbry points out that "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference."  *Horn by Parks v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citing *Danese v. Asman*, 875 F.2d 1239, 1243-44 (6th Cir. 1989)).  Defendant Colbry also cites *Farmer*, 511 U.S. at 837 ("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware

Of course, the injury would also be apparent to the Plaintiff. As the Defendant's original Brief in Support points out, and Plaintiff does not dispute, this injury occurred on July 24, 2005. All the elements of a cause of action, including damages, were present on that date. The statute of limitations then began to run. It was not delayed until Plaintiff allegedly received a more definitive determination of the extent of his medical problem in March 2007. To conclude otherwise would be to place the "statute of repose in the sole hands of the party seeking relief," which the Court in *Wallace* cautioned against doing. Similarly, this Court should reject the Plaintiff's attempt to avoid the statute of limitations defense.

Doc. Ent. 21 at 4-5.

Here, the Court should conclude that the statute of limitations began to run no later than

May 4, 2006. Attached to plaintiff's response is a March 9, 2007 letter from Jayson S.

Greenberg, M.D., of ENT Associates of Jackson, P.C., wherein plaintiff is diagnosed with

spasmodic dysphonia,[21] septal deviation,[22] rhinitis[23] and turbinate hypertrophy.[24] Doc. Ent. 20 at

of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

To be sure, *Horn by Parks* and *Farmer* did not concern the accrual date of a claim with respect to a statute of limitations. The portion of *Horn by Parks* upon which defendant relies concerned "the trial court grant[ing] defendants' motion under Fed.R.Civ.P. 50(a) for judgment as a matter of law on plaintiff's Eighth Amendment claim." *Horn by Parks*, 22 F.3d at 660-661 ("The trial court did not err in awarding judgment as a matter of law to defendants on the claim that they were deliberately indifferent to plaintiff's serious medical needs."). Furthermore, the portion of *Farmer* upon which defendant relies is found within the Court's explanation of "deliberate indifference." *Farmer*, 511 U.S. at 835-840 ("subjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for 'deliberate indifference' under the Eighth Amendment.").

[21]According to Dr. Greenberg, plaintiff's "examination is consistent with adductor spasmodic dysphonia." Doc. Ent. 20 at 6. Dysphonia is "[a]n impairment of voice[,]" or "[t]he condition of being able to speak loudly only with difficulty." SCHMIDT'S ATTORNEYS' DICTIONARY OF MEDICINE, VOLUME 1, D-169 (1995).

[22]Dr. Greenberg's letter stated that plaintiff's "nasal septum is severely deviated to the left with a left septal spur that does contact the inferior turbinate." Doc. Ent. 20 at 6. Deviation of the nasal septum is "[a] condition in which the nasal septum (the partition-like structure which separates the interior of the nose into two compartments, a right and a left) is bent toward one side or the

6.  Plaintiff claims that "[a]t the earliest date, assuming that [he] was fully aware of his permanent injuries, he could not have possibly filed his complaint until March of 2007[.]" Doc. Ent. 20 at 3.[25]

However, "[a]ctual knowledge . . is not the appropriate measure; the test is whether he knew or should have known based upon reasonable inquiry, and could have filed suit and obtained relief." *Cooey v. Strickland*, 479 F.3d 412, 422 (6th Cir. 2007).  Here, the Sixth Circuit's decision in *Coate v. Montgomery County, Kentucky*, No. 99-6123, 2000 WL 1648131 (6th Cir. Oct. 27, 2000) is instructive.  Therein, the Court stated:  "the existence of colon cancer is not obvious to an individual who is suffering from it.  Therefore, the situation in this case greatly differs from situations where prisoners know while they are in prison that officials have denied them appropriate medical care." *Coate v. Montgomery County, Kentucky*, No. 99-6123, 2000

---

other.  The side of the nose into which the septum protrudes is partially obstructed; in severe cases, breathing through the obstructed side is difficult or impossible.  A small amount of deviation is normal." SCHMIDT'S ATTORNEYS' DICTIONARY OF MEDICINE, VOLUME 3, N-17 (1995).

[23]Rhinitis is "[i]nflammation of the mucous membrane of the nose.  The mucous membrane is the moist lining of the interior of the nose." SCHMIDT'S ATTORNEYS' DICTIONARY OF MEDICINE, VOLUME 4, R-106 (1995).

[24]Dr. Greenberg's letter stated that plaintiff's "nose is congested with turbinate hypertrophy." Doc. Ent. 20 at 6.  Turbinate is "[a] turbinate bone, i.e., a concha[,]" or "[s]haped like a scroll." SCHMIDT'S ATTORNEYS' DICTIONARY OF MEDICINE, VOLUME 4, T-202 (1995).  Hypertrophy is "[a]n abnormal enlargement of a part or an organ due to an increase in the size of its constituent cells. Hypertrophy is usually a compensating mechanism, to enable the organ to perform more work than its normal structure would allow." SCHMIDT'S ATTORNEYS' DICTIONARY OF MEDICINE, VOLUME 2, H-236 (1995).

[25]This report assumes that plaintiff means he could not have filed his complaint until March 2007, because he did not know about his claims until them.  If this assumption is correct, then plaintiff's statement is somewhat belied by his June 24, 2008 affidavit, wherein he attests that "[o]n [August 19, 2006] [he] discovered that the injuries [he] suffered at the [SCJ] have resulted in permanent damage." Doc. Ent. 1 at 11.

WL 1648131, *3 (6th Cir. Oct. 27, 2000). Furthermore, the Court stated, "[t]he 'event' alerting Coate to the fact that she was being denied adequate medical treatment was her knowledge that the barium enema and x-rays ordered by Dr. Humphrey on November 1, 1995, were never administered, not the eventual diagnosis in October 1996 that she had colon cancer." *Coate*, 2000 WL 1648131 at *5.

Likewise, the events in the case at bar that should have alerted plaintiff as to his claim(s) against Colbry were the July 24, 2005 incident and defendant Colbry's ensuing actions while plaintiff was in SCJ. Therefore, plaintiff's claims that defendant Colbry was deliberately indifferent to plaintiff's serious medical needs or that defendant Colbry failed to protect plaintiff against inmate assault accrued, and the statute of limitations began to run, no later than May 4, 2006, the date plaintiff was transferred from the SCJ.[26]

If the events that should have alerted plaintiff to his claim occurred at the latest on May 4, 2006, it follows that, in the absence of an event which would toll it, the statute of limitations ran on May 4, 2009 - a date before the filing of plaintiff's complaint.[27]

_____

[26]In his December 10, 2009 affidavit, Lt. Powell states that plaintiff was "last incarcerated at [SCJ] on May 4, 2006[.]" Doc. Ent. 8-4 at 2 ¶ 2.

[27]This is true notwithstanding the fact that plaintiff blames defendants for interfering with plaintiff's ability to discover the extent of his injuries. Plaintiff specifically asserts that "he could not have reasonably discovered that he suffered serious or permanent injury, as a result of Defendant's failure to provide proper medical attention and subsequently, the [MDOC's] continued failure to provide the same." Doc. Ent. 20 at 3. The MDOC is not a party to this lawsuit, and, taking into account that defendant Colbry is the only moving party to the motion at bar, any claim that defendant Colbry's alleged deliberate indifference to plaintiff's serious medical need impeded plaintiff's ability to discover the extent of his medical injuries goes to the date upon which plaintiff's claim *accrued*. A conclusion that the statute of limitations began to run no later than May 4, 2006 - the date on which plaintiff was transferred from the SCJ - is a date beyond which plaintiff would not have been in defendant Colbry's care.

17

**5.      Michigan's tolling statute, Mich. Comp. Laws § 600.5856, does not operate to make plaintiff's complaint timely.**

"State tolling statutes . . . apply to § 1983 actions unless the result is inconsistent with federal law or policy." *Jones*, 905 F.2d at 909 (citing *Board of Regents v. Tomanio*, 446 U.S. 478, 488-92 (1980)).  "Whether a limitations period is tolled is an inherent aspect of a state's statute of limitations and, therefore, federal courts are obligated to apply state tolling statutes in § 1983 actions." *Perreault v. Hostetler*, 884 F.2d 267, 270 (6ᵗʰ Cir. 1989).  "In actions brought under section 1983, state tolling statutes apply where the most nearly analogous state statute of limitations is borrowed, to the extent that the tolling provisions are not inconsistent with federal policy underlying section 1983." *Jones v. Shankland*, 800 F.2d 77, 80 -81 (6ᵗʰ Cir. 1986) (citing *Tomanio*, 446 U.S. at 484-485).

In Michigan, the limitations of actions are governed by Mich. Comp. Laws §§ 600.5801-600.5869.  As an initial matter, it is worth noting that the statute of limitations is not tolled by Mich. Comp. Laws § 500.5851 on the sole basis of plaintiff's confinement in SCJ or imprisonment in the custody of the MDOC.  "The statutory provision for tolling the statute of limitations for incarceration was repealed in Michigan effective April 1, 1994, and a grace period expired one year after that date." *Johnson v. Candelas*, No. 99-2451, 2000 WL 1477503, *1 (6ᵗʰ Cir. Sept. 26, 2000) (referencing Mich. Comp. Laws § 600.5851(9), (10)).  Therefore, as defendant points out,[28] "[i]ncarceration is no longer a basis for tolling the statute of limitations." *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, *1 (6ᵗʰ Cir. Feb. 2, 1999) (referencing Mich. Comp. Laws § 600.5851(9), (10) (effective April 1, 1994)).  *See also Manning v. Bolden*, 25

---

[28] *See* Doc. Ent. 8 at 8-9.

Fed.Appx. 269, 271 (6th Cir. 2001) ("Moreover, effective April 1, 1994, the Michigan legislature amended the statute in order to abolish imprisonment as a disability that would toll the accrual of the statute of limitations.").

With respect to tolling, Michigan's laws governing the limitation of actions provide that "[t]he statutes of limitations or repose are tolled in any of the following circumstances:

> (a) At the time the complaint is filed, if a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules.

> (b) At the time jurisdiction over the defendant is otherwise acquired.

> (c) At the time notice is given in compliance with the applicable notice period under section [600.]2912b, if during that period a claim would be barred by the statute of limitations or repose; but in this case, the statute is tolled not longer than the number of days equal to the number of days remaining in the applicable notice period after the date notice is given.

Mich. Comp. Laws § 600.5856 ("Tolling of statutes of limitations or repose") (footnote omitted). As the Sixth Circuit has stated, "[t]he statute of limitations is not tolled in the absence of service of process or otherwise acquiring of jurisdiction." *Bufalino v. Michigan Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968).

None of these subsections - 600.5856(a), (b) or (c) - operates to make plaintiff's June 29, 2009 / July 9, 2009 complaint timely as to his claim(s) against Colbry which accrued no later than May 4, 2006.

**6.      In this case, equitable tolling of the statute of limitations is not warranted.**

The Court is left to consider whether Section 600.5805(10) can be equitably tolled. Recently, the Michigan Court of Appeals explained that "the doctrine of equitable tolling . . . applies to 'extraordinary' situations where it would be unfair to allow a statute of limitations

defense to prevail because of particular and unusual inequities."  *Hawkins v. Department Of Corrections*, No. 293478, 2010 WL 1576764, *2 (Mich. App. Apr. 20, 2010).

As cases from the Sixth Circuit indicate, the three-year statute of limitations set forth in Mich. Comp. Laws § 600.5805 may be tolled, depending on the circumstances.  *See Drake v. City of Detroit, Michigan*, 266 Fed.Appx. 444, 449 (6th Cir. 2008) (applying Mich. Comp. Laws §§ 600.5805(10) and 600.5855,[29] "[c]learly it cannot be said that Drake failed to discover the operative facts of an excessive force claim due to any subsequent conduct by the Defendants. With the Michigan's equitable tolling provision unavailable, Drake's excessive force claim is time-barred by the statute of limitations.");[30] *Lepard v. NBD Bank, a Div. of Bank One*, 384 F.3d 232, 236-237 (6th Cir. 2004) (concluding that claims for intentional infliction of emotional distress and conversion, each of which were subject to the three-year statute of limitations in Mich. Comp. Laws §§ 5805(9), were time-barred and affirming conclusion that plaintiff was not entitled to equitable tolling); *Gibbs v. Davis*, No. 98-1634, 1999 WL 776311, *2 (6th Cir. 1999) ("Under Michigan law, the statute of limitations for legal malpractice claims is two years, and such claims accrue when the attorney-client relationship giving rise to the malpractice claim ends.  *See* Mich. Comp. Law §§ 600.5805, 600.5838(1).[31]  Accepting Gibbs's allegations of

---

[29]Mich. Comp. Laws § 600.5855 governs "[f]raudulent concealment of claim or identity of person liable, discovery[.]"

[30]*See also McCray v. Moore*, No. 07-13297, 2008 WL 4225762, 10 (E.D. Mich. Sept. 9, 2008) (Hood, J., accepting report and recommendation of Hluchaniuk, M.J.) ("plaintiff cannot establish either that defendants 'wrongfully concealed' anything or that he 'failed to discover his cause of action' before the expiration of the limitations period.  With Michigan's equitable tolling provision unavailable, plaintiff's excessive force claim, as to all remaining defendants against whom this claim is asserted, is time-barred by the statute of limitations.").

[31]"Except as otherwise provided in section 5838a, a claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues

incarceration as true, this claim is also untimely.  *See* Mich. Comp. Laws § 600.5851(9), (10). For the reasons given above, neither Michigan's tolling statute nor the doctrine of equitable tolling changes the result.").

However, the Sixth Circuit has explained that "[r]esort to equitable grounds to toll the limitations period is 'very much restricted.'"*Arens v. G.R. Mfg. Co.*, 968 F.2d 603, 605 (6th Cir. 1992) (citing *Geromette v. General Motors Corp.*, 609 F.2d 1200, 1203 (6th Cir.1979)).  By way of example, *Arens* involved a Michigan Elliott-Larsen Act claim to which the three-year statute of limitations set forth in Mich. Comp. Laws § 600.5805(8) was applied.  The plaintiffs argued "that since [defendant] had actual notice of their action and no prejudice resulted from exceeding the limitations period their claim should not be held time-barred."  *Arens*, 968 F.2d at 605. However, the Court stated, "actual knowledge is not a sufficient basis for equitable tolling."  *Id.* at 605-606 (citing *Mason v. Letts*, 14 Mich.App. 330, 331-33, 165 N.W.2d 481 (1968)).  The Court then explained that "[t]he plaintiffs must show conduct on the part of [defendant] that prevented the assertion of their rights within the statutory period."  *Id.* at 606 (citing *Geromette*, 609 F.2d at 1203; *Mason*, 14 Mich.App. at 333, 165 N.W.2d 481; *Cronin v. Minster Press*, 56 Mich.App. 471, 481-82, 224 N.W.2d 336 (1974)).  *Id.*  Ultimately, the Court concluded that "[t]here [wa]s no evidence that [defendant] engaged in such conduct."  *Id.*

In this case, plaintiff replies that he "was transferred to the [MDOC] without medical treatment or diagnosis[;]" to this day, he "is still unaware of the total extent of his injuries due to

---

at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim."  Mich. Comp. Laws § 600.5838(1) (footnote omitted).

the [MDOC's] failed health system[;]" and the MDOC "medical staff are failing, and refusing, to allow [him] to get full proper medical attention despite being ordered by University of Michigan medical experts." Doc. Ent. 20 at 2. Specifically, plaintiff argues that "he could not have reasonably discovered that he suffered serious or permanent injury . . . as a result of Defendant's failure to provide proper medical attention and[,] subsequently, the [MDOC's] continued failure to provide the same." Plaintiff claims that he "continues to be deprived of proper medical care despite the fact that [a] medical specialist evaluated and diagnosed [him] with his permanent injury in March of 2007." Doc. Ent. 20 at 3. Furthermore, he concludes, "[defendants] are responsible for [plaintiff's] inability to be aware of the seriousness or type of injury he suffered, as well, the problem then continued after being transferred to the [MDOC] and continues to the present day." Doc. Ent. 20 at 4. Therefore, he claims, his complaint "was filed well within the statute of limitations period of (3) years after he discovered that he suffered a serious body impairment." Doc. Ent. 20 at 4-5.

To the extent plaintiff claims that his ability to discover the extent of his injury was stifled by defendants' "failure to provide proper medical attention [at SCJ] and subsequently, the [MDOC's] continued failure to provide the same[,]" Doc. Ent. 20 at 3, plaintiff's claims do not evidence a circumstance under which the three-year statute of limitations set forth in Mich. Comp. Laws § 600.5805(10) should be equitably tolled. This is so, because plaintiff has not "show[n] conduct on the part of [defendant] that prevented the assertion of their rights within the statutory period." *Arens*, 968 F.2d at 606.[32] Nor is this the type of case where plaintiff would

_____

[32]For example, neither plaintiff's complaint (Doc. Ent. 1 at 3-4) nor his response (Doc. Ent. 20 at 2-4) argues that during his detention in SCJ, defendant Colbry interfered with his ability to file a lawsuit, such as denying or interfering with a request for legal materials or postage, etc. In other

argue that "defendants fraudulently concealed their unlawful activities in order to escape detection[.]" *Bufalino*, 404 F.2d at 1028 (applying the three-year statute of limitations in Mich. Comp. Laws § 600.5805 and citing the tolling provision in Mich. Comp. Laws § 600.5856, "[u]nder Michigan law, in order to toll the statute there must be affirmative acts or misrepresentations. Mere silence is not sufficient.").

## III.  **NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir.

---

words, plaintiff does not argue that defendant Colbry's actions constituted an impediment to plaintiff's access to the court. *See, i.e., Maclin v. Robinson*, 74 Fed.Appx. 587, 589 (6th Cir. 2003) ("In this case, Maclin estimated that he had access to the law library for approximately 1.5 hours a week. While it was not the six hours to which he claims he was entitled under prison policy, Maclin has not pointed to any authority for the proposition that being permitted only 1.5 hours of library access a week constitutes a state-created impediment to his access to the courts, and we have found none that is binding in this circuit. Since the respondent did not violate a federal law or the Constitution in restricting Maclin's library access, there exists no basis for a § 2244(d)(1)(B) claim.").

1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  E.D. Mich. LR 72.1(d)(3).  The response shall not be more

than five (5) pages in length unless by motion and order such page limit is extended by the

Court.  The response shall address specifically, and in the same order raised, each issue

contained within the objections.

s/Paul J. Komives                                 
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE


Dated 7/28/10

The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record and   by
electronic means or U.S. Mail on July 28, 2010.

s/Eddrey Butts        
Case Manager